(No. 58607.—

FREEMAN UNITED COAL MINING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Joseph C. Dullenty, Appellee).

*Opinion filed February 1, 1984.*

488

Elmer Jenkins and Carter Harrison, of Benton, for appellant.

Edward F. Brennan, Jr., and G. Richard Jones, of Carr, Korein, Kunin, Schlichter & Brennan, of East St. Louis, for appellee.

JUSTICE SIMON delivered the opinion of the court:

This appeal requires us to answer two questions: Is

an employee who is receiving ongoing payments for permanent total disability under section 8(e)(18) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)(18)) eligible for an award of temporary disability benefits when he is injured in a later employment-related accident? If so, is the employer entitled to credit its payments of the permanent total disability award against the amount due the employee each week for his temporary disability?

On May 7, 1973, the claimant, Joseph Dullenty, while employed as a miner by the appellant, Freeman United Coal Mining Company, sustained injuries which resulted in the amputation of both legs below the knee. An arbitrator for the Industrial Commission awarded him a pension for the loss of both legs, to be paid in monthly installments of $315 for the rest of his life, in addition to necessary medical and surgical expenses and the cost of artificial limbs. The pension was awarded pursuant to section 8(e)(18) of the Act and the arbitrator's finding that Dullenty's double amputation constituted "the complete disability of the Petitioner" (Ill. Rev. Stat. 1975, ch. 48, par. 138.8(e)(18)). While Freeman continued to pay these benefits as well as Dullenty's medical and surgical expenses, it retained Dullenty in its employ as a maintenance man. He worked in this capacity on a regular basis for five years.

As part of the work program at the mine, employees took showers at the mine site on company time at the end of a shift to wash off the coal dust. On July 28, 1979, Dullenty slipped while taking a shower at work and broke the skin on the stump end of his left leg. Surgery was required to close this wound, and following the injury Dullenty has had continuing problems in getting a prosthesis that fits comfortably, with the result that he has had difficulty standing for any length of time and has not been able to continue working.

Dullenty filed a claim for full temporary total disability benefits. An arbitrator awarded him benefits of $185.31 per week in addition to his monthly pension and without any credit for amounts paid under the pension. The Industrial Commission affirmed this decision with one commissioner dissenting, and the circuit court of Franklin County confirmed the award.

The basis for this appeal by Freeman is that it makes no sense to find that a person who has been declared permanently and totally disabled is capable of suffering an additional disability; consequently, an award for permanent total disability under sections 8(e)(18) and 8(f) of the Workers' Compensation Act (Ill. Rev. Stat. 1979, ch. 48, pars. 138.8(e)(18), 138.8(f)) is the largest amount that a worker may receive and precludes any type of additional award. The interpretation and application of section 8(e)(18) which Freeman urges upon us does not find support in either the wording of the Act or the decisions of this court. That section provides:

> "The specific case of loss of both hands, both arms, or both feet, or both legs, or both eyes, or of any two thereof, or the permanent and complete loss of the use thereof, *constitutes total and permanent disability,* to be compensated according to the compensation fixed by paragraph (f) of this Section. These specific cases of total and permanent disability do not exclude other cases.
>
> Any employee who has previously suffered the loss or permanent and complete loss of the use of any of such members, and in a subsequent independent accident loses another or suffers the permanent and complete loss of the use of any one of such members the employer for whom the injured employee is working at the time of the last independent accident is liable to pay compensation only for the loss or permanent and complete loss of the use of the member occasioned by the last independent accident." (Emphasis added.) (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)(18).)

Section 8(f), to which the quoted section refers, set

forth the rates and conditions of payment of benefits for permanent total disability at the time the original award in this case was entered. (The rates of payment now appear in section 8(b)(2) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(b)(2)).) The payment schedules apply "[i]n case of complete disability, which renders the employee wholly and permanently incapable of work, or in the specific case of total and permanent disability as provided in [section 8(e)(18)]" (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(f)).

There is a distinction between the two kinds of permanent and total disability referred to in section 8(f), as the wording of that section suggests. "[C]omplete disability, which renders the employee wholly and permanently incapable of work" is defined only in section 8(f), and only in those words; it can form the basis for an award only if the employee is able to show that his injuries have left him without a market for his skills, so that he is for practical purposes unemployable (*Intercraft Industries Corp. v. Industrial Com.* (1983), 95 Ill. 2d 297, 300-01; *Valley Mould & Iron Co. v. Industrial Com.* (1981), 84 Ill. 2d 538, 546-47), and benefits for that type of disability must cease or be reduced should the employee subsequently reacquire a wage-earning capacity (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(f)). Disability under section 8(e)(18), by contrast, is "permanent and total" only by legislative pronouncement; it is not inconsistent with a continuing ability to work, and in that event the pension mandated for it is not to be affected by the employee's return to work. (*National Lock Co. v. Industrial Com.* (1975), 62 Ill. 2d 51; *Scandroli Construction Co. v. Industrial Com.* (1973), 54 Ill. 2d 395.) Although the benefit rates for disability under section 8(e)(18) are calculated in the same manner as those for disability under section 8(f), the purpose behind section 8(e)(18) is not merely to replace lost wages or provide financial protection for workers whose earning power is terminated, but "is broad enough to accommodate the pain and inconvenience

that accompany the 'specific case of loss of both hands, both arms, both feet or both eyes \*\*\*' even though the employee remains able to work." (*National Lock Co. v. Industrial Com.* (1975), 62 Ill. 2d 51, 56-57.) The only limitation on the recovery provided by section 8(e)(18) is that set forth in the second paragraph of that section, which provides that, where an employee loses two members of the body in separate accidents, the employer who employs him at the time of the second accident is liable only for the loss of the member involved in that accident, rather than for the permanent and total loss of the man as a whole.

As we read section 8(e)(18), it provides no basis for arguing, as Freeman does, that an award of temporary total disability in addition to an award of section 8(e)(18) benefits either goes beyond the intention of the Act or requires one to suppose the logically impossible. "If an employee may properly be rated at 100 per cent disability to qualify him for \*\*\* workmen's compensation, even though his earning power has not in truth, for practical purposes, been impaired, it should be at least equally permissible to penetrate the fiction of 100 per cent disability and accept the truth of his remaining earning ability so that \*\*\* a subsequent injury with increased actual disability may be compensated." (*Smith v. Industrial Accident Com.* (1955), 44 Cal. 2d 364, 370, 282 P.2d 64, 68; accord, *Dennis v. Brown* (Fla. 1957), 93 So. 2d 584; *Industrial Carving Co. v. Hurst* (1969), 223 Tenn. 469, 447 S.W.2d 871; 2 A. Larson, *Workmen's Compensation* secs. 59.41, at 10—514, 59.42(b) (1983)). The court's observation in *Cropp v. State Workmen's Compensation Commissioner* (W. Va. 1977), 236 S.E.2d 480, 484-85, is also relevant to the issue confronting us:

> "To say that a life award precludes the obtaining of any additional disability benefits where the injured workman is possessed of sufficient initiative and skills to become re-employed is to embrace a doctrine that human endeavor can ultimately be parceled off in percentages."

The compensation which Dullenty is receiving pursuant to section 8(e)(18) reflects not actual permanent total disability or actual loss of wages but "a stated legislative determination that the [specific injuries suffered] shall have compensation at a fixed figure" (*Jones v. Cutler Oil Co.* (1959), 356 Mich. 487, 491, 97 N.W.2d 74, 76), even though the injuries may heal. By contrast, the temporary total disability award which Dullenty seeks in this proceeding is calculated to replace lost wages during periods of actual disability and has no other purpose, apart from assuring medical treatment. The former award is authorized by the special circumstances attendant on the loss of both feet, and it relates only to the first accident Dullenty suffered. The second accident, which destroys earning power and income stream just as surely as the first, "is not to be inflicted free of liability and suffered without recompense. The law requires two awards." *Jones v. Cutler Oil Co.* (1959), 356 Mich. 487, 502, 97 N.W.2d 74, 81; see 2 A. Larson, *Workmen's Compensation* sec. 59.41, at 10—512 through 10—515 (1983).

Freeman relies on *Caterpillar Tractor Co. v. Industrial Com.* (1947), 397 Ill. 474. That decision is not in point because it involved a different section of the Workmen's Compensation Act, section 8(e)(17½) (Ill. Rev. Stat. 1945, ch. 48, par. 145(e)(17½), now Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)(17)). That section provides for compensation for successive injuries which culminate in or involve the amputation or permanent loss of use of one member of the body. It was construed in *Caterpillar Tractor* as permitting only one award and as requiring a reduction of that award to reflect the loss occasioned by the earlier injury. The claimant in that case first lost four toes of his right foot, and a later accident resulted in the amputation of the same foot. His claim was, therefore, based on what is now section 8(e)(17) and did not require an interpretation or application of section 8(e)(18) which deals with the "specific

case of loss of both" members.

The cases from other States which Freeman cites are also not in point. (*E.g., Cabe v. Skeens* (Ky. 1967), 422 S.W.2d 884; *McGee v. State ex rel. Board of Commissioners* (La. App. 1978), 355 So. 2d 1079; *Harrison v. Lakey Foundry Corp.* (1960), 361 Mich. 677, 106 N.W.2d 521; *Walls v. Hodo Chevrolet Co.* (Miss. 1974), 302 So. 2d 862; *Rollins v. Albuquerque Public Schools* (1979), 92 N.M. App. 795, 595 P.2d 765; *Scialo v. Luisi* (1960), 91 R.I. 86, 161 A.2d 194.) None of them involved an award of specific permanent total disability benefits under a statute comparable to section 8(e)(18) of the Workers' Compensation Act, followed by a return to work and a temporarily disabling accident. While the maxim that "[a] workman can only be 100% totally disabled. He cannot be 200% disabled," as one case put it (*Rollins v. Albuquerque Public Schools* (1979), 92 N.M. App. 795, 797, 595 P.2d 765, 767), may be applicable and preclude an award of further benefits following an adjudication of actual permanent total disability under section 8(f) of our Act, we are not called upon to decide that issue here, for our judgment is directed solely at the application of section 8(e)(18). We merely hold that, inasmuch as adjudications of permanent total disability under section 8(e)(18) are to be made without regard to a worker's future employment prospects, and awards under that section do not reflect actual unemployability, the Workers' Compensation Act anticipates that a recipient of section 8(e)(18) benefits may in addition recover temporary total disability benefits should he retain or recover his ability to earn wages only to lose that ability because of a work-related accident. In these circumstances, the Act contemplates that the employee, notwithstanding the previous award, is to be compensated for his current loss of earning power.

Freeman argues that in any event it is entitled to a credit against the temporary award in the amount of the

benefits it is paying under the section 8(e)(18) award so as to avoid duplication of benefits. As we observed above when we referred to the *National Lock Co.* case, a primary purpose of the benefits paid under section 8(e)(18) is to compensate the employee for the pain and inconvenience represented by the loss of both feet, both legs, both arms or both eyes, while the benefits payable for temporary total disability are calculated to replace his lost current earnings. Viewed in this manner, there is no duplication between awards under section 8(e)(18) and those for temporary total disability. More importantly, in construing statutes which purport to impose a general liability or a duty common to all, the courts are free only "to declare and enforce the law as enacted by the legislature, to interpret the language used by the legislature where it requires interpretation, and not to annex new provisions or substitute different ones, or read into a statute exceptions, limitations, or conditions which depart from its plain meaning." (*Belfield v. Coop* (1956), 8 Ill. 2d 293, 307; see *Froud v. Celotex Corp.* (1983), 98 Ill. 2d 324, 334; *Harvey Firemen's Association v. City of Harvey* (1979), 75 Ill. 2d 358, 363.) Credits operate as partial exceptions to the liabilities created by the Workers' Compensation Act, and should therefore be narrowly construed where granted and not be extended by implication unless necessary to accomplish the purpose of the Act. 34 Ill. L. & Prac. *Statutes* sec. 152 (1958).

Section 8(e)(17) of the Act (Ill. Rev. Stat. 1979, ch. 48, par. 138.8(e)(17)) provides for credits which bear upon liability for accidents suffered after the loss of a member of the body such as a foot. It states that, in computing the compensation to be paid for any accident, the earlier loss of "any member, including hand, arm, thumb or fingers, leg, foot or any toes *** or the *** sight of an eye" shall be taken into account as a deduction. This provision, which was interpreted in the *Caterpillar Tractor* case as well as

in *General Motors Corp. v. Industrial Com.* (1975), 62 Ill. 2d 106 and *D'Amico Macaroni Co. v. Industrial Com.* (1970), 44 Ill. 2d 519, is phrased in the singular and does not refer to "[t]he specific case of loss of both hands, both arms, or both feet, or both legs, or both eyes, or of any two thereof," which is the basis for a section 8(e)(18) award. Section 8(e)(18) does not contain a comparable provision for a deduction.

We conclude, based on our previous discussion as well as the absence of compelling language in the statute, that the legislature did not intend to allow a credit against subsequent disability payments for payments made under section 8(e)(18). Had this been the legislature's intent, it would have been a simple matter to either include language to that effect in the text of that section or to omit the singular wording in section 8(e)(17). No such change was made even though the General Assembly made changes in both of those sections in 1975. (Pub. Act 79—79, 1975 Ill. Laws 224, eff. July 1, 1975.) There is thus no statutory authority for departing from the general rule that an employer takes his employees as he finds them and must pay full compensation for injuries which result in industrial disability. (*Motor Wheel Corp. v. Industrial Com.* (1979), 75 Ill. 2d 230, 238.) Nor are we convinced that the purposes of the Workers' Compensation Act would be undermined by not reading a credit such as Freeman seeks into the law. The purpose of the Act was to provide a flow of benefits to compensate for lost wages (*Board of Education v. Industrial Com.* (1982), 93 Ill. 2d 1, 14) and to compensate workers for the loss of industrial earning capacity. Although section 8(e)(18) is not central to this purpose to the extent that it compensates for pain or inconvenience rather than for actual disability, the allowance of full benefits under that section without credit cannot be said to detract from that purpose, and the provision should not be read other than as the legislature framed it. See *Cropp v. State*

*Workmen's Compensation Commissioner* (W. Va. 1977), 236 S.E.2d 480, 483-84.

In holding as we do we recognize, as Freeman urges, that employers may be discouraged from hiring individuals who have lost both arms, both legs or both feet in view of the risk that any further accident, no matter how slight, might severely disable such persons and lead to a substantial award of further compensation. However, encouragement is a two-way street, and workers with useful skills might elect not to rejoin the work force if the law did not permit them to recover for work-related accidents in the future but continued to provide them with a pension whether they return to work or not. The legislature was entitled to resolve this problem in the manner it did, and we are not free to disturb its choice.

Freeman's final argument is that the Industrial Commission's finding that Dullenty's 1979 injury was a separate accident rather than a continuation of the original injury he suffered is against the manifest weight of the evidence, and that consequently the award of temporary total disability benefits must be reversed. Although the second injury was to the same part of the body as the first, the test is not whether Dullenty sustained a new or independent type of injury, as Freeman suggests, but whether he suffered a second accident which caused further disability of a type which the law would recognize as compensable. In this regard, the record reveals no periods of Dullenty being absent from work due to problems with his stumps prior to his slipping while in the company shower, and while Dullenty visited doctors before that occurrence and had minor adjustments made to his prosthesis, his uncontradicted testimony was that when he fell in the shower, he broke his left stump open, has since that time been unable to obtain a prosthesis which fits his stump, and cannot stand for any length of time. The Commission could have concluded that the fall in the shower caused

an injury to his left stump which resulted in swelling or bruises, and that his consequent inability to fit a prosthesis to the stump disabled him from work. We must accept a factual finding or an inference drawn by the Commission unless it is against the manifest weight of the evidence (*Courson v. Industrial Com.* (1983), 98 Ill. 2d 1, 9), and we cannot say that is the case here.

The factual conclusions drawn by the Industrial Commission were supported by the evidence, and the law was properly applied. We affirm the decision of the circuit court which confirmed Dullenty's award.

*Judgment affirmed.*