ZEPHYR, INC., et al., Appellants, v. THE INDUSTRIAL COMMISSION et al. (John J. Giannoules, Appellee).

First District (Industrial Commission Division)   No. 1—90—0679WC

Opinion filed March 1, 1991.—Modified on denial of rehearing
July 26, 1991.

Law Offices of Francis M. Discipio, of Chicago (Francis M. Discipio and Ralph W. Miller, Jr., of counsel), for appellants.

Gaines & Gaines, of Chicago (Lewis P. Gaines, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

Respondents, Zephyr, Inc., and The Travelers Insurance Company, appeal from an order of the circuit court of Cook County confirming a decision of the Industrial Commission (Commission) which ordered respondents to pay for remodeling claimant's home. Claimant, John Giannoules, sought worker's compensation benefits under section 8(a) of the Illinois Workers' Compensation Act (Ill. Rev. Stat. 1987, ch. 48, par. 138.8(a)) for injuries sustained on December 27, 1986, while working for Zephyr, which resulted in the 100% loss of the use of both legs. By agreement of the parties, the Commission determined that claimant was permanently totally disabled within the meaning of the Act. The arbitrator entered an award based upon that determination, which has not been appealed.

The issues before this court are whether the Commission's decision which awarded claimant $275,491.74 for the modification and remodeling of his residence at 1715 Parkside Drive in Hoffman Estates, Illinois, was against the manifest weight of the evidence, and whether the Act may be construed to cover payment for remodeling claimant's home.

On January 14, 1988, after a hearing, the arbitrator ordered respondents to pay claimant $299,200 for remodeling his home. The arbitrator explicitly adopted the testimony and recommendations of claimant's architects, Leonard Wisniewski and Michael Dixon. The arbitrator found these changes "reasonable and necessary" for claimant's physical, mental and occupational rehabilitation under section 8(a). The arbitrator rejected the testimony of Steven Lome, Travelers' expert, who estimated the cost of remodeling at $85,000.

Upon review, the Commission reopened the proofs, requesting specific additional evidence. Claimant submitted various itemized estimates for his modification plan. Respondents did not submit any

further evidence. The Commission found that certain items in claimant's proposed plan were not reasonable and necessary, particularly the elevator, skylight, security system, lighting equipment, and waterbed. The Commission accordingly reduced the award to $275,491.74. In its order, the Commission explicitly found Travelers' modification plan "inadequate" and characterized it as "consisting mainly of changes to Petitioner's kitchen."

On appeal, respondents argue that the Commission's decision ordering respondents to pay $275,491 to remodel claimant's home is against the manifest weight of the evidence for two reasons: (1) claimant's architect did not rely upon a medical opinion in developing the proposal; and (2) claimant's proposal was based upon a rough estimate of costs and was, thus, too speculative and uncertain upon which to base a dollar award against respondents.

Claimant testified that while working for Zephyr on December 27, 1986, he sustained a bullet wound which severed his spinal cord and completely paralyzed him from the chest to the toes. Dr. Roth, claimant's treating physician, told him that he will be confined to a wheelchair or bed for the rest of his life. Claimant cannot control his bladder or bowel function and frequently has accidents. He follows a daily regimen for bowel and bladder control, which requires a nurse's assistance for three to four hours daily. Claimant's 10-year-old daughter, who has been a paraplegic since birth, is also confined to a wheelchair and has similar bowel and bladder control problems.

Claimant currently resides at 211 East Ohio Street in Chicago in a facility leased and operated for Rehabilitation Institute of Chicago (Institute) patients, where he has lived since March 12, 1987. Prior to that time, he lived in the Institute's main building several blocks away. Dr. Roth had instructed claimant to remain at the Institute facility until his home was modified because the home lacked accessible bathroom facilities and a ramp to accommodate his wheelchair.

Dr. Roth testified before the arbitrator for respondents that claimant's incontinence and necessity for a bladder and bowel program required two separate wheelchairs and accessible bathrooms for claimant and his daughter. Dr. Roth also stated that claimant's physical and mental well-being required that he have full accessibility to all parts of the home and sufficient space to roll through all doorways, and emphasized that two wheelchairs needed to be accommodated in the home. Dr. Roth also recommended separate beds for claimant and his wife, and heat lamps. He later stated that the

home needed at least two exits and ramps to the outside for safety and an exit and ramp to the garage. Although Dr. Roth testified that Travelers' plan was adequate for claimant's needs, that plan provided only one exit and one bathroom.

Leonard Wisniewski, claimant's architect, testified at the arbitration hearing that he had designed eight homes for wheelchair-incapacitated persons and considers himself an expert in the area. He visited claimant 20 times at his home in order to understand claimant's physical disability, the limitations of wheelchair movements in the home and the special family circumstances. Wisniewski also consulted numerous textbooks and treatises. He did not rely on the specific recommendations of any doctor. His plan proposes the following modifications and additions: add ramp to front door; add storage locations for two wheelchairs; widen main corridor to accommodate two wheelchairs; remodel bathroom to allow claimant to transfer from wheelchair to toilet; remodel bedroom to allow him to readily transfer from wheelchair to bed; remodel kitchen to allow access for two wheelchairs; add elevator to basement for safety and access to physical therapy equipment; add ramps to living room and family room; and increase garage size to accommodate elevator.

Wisniewski prepared a 22-item estimate of construction costs which totaled $323,940 and included legal fees and building permits. In developing this estimate, he relied upon cost estimates, his own experience in estimating construction costs, and conversations with suppliers and other persons experienced in this area. He testified that his "whole concern was to minimize cost and simplify the building." Wisniewski did not retain a general contractor, but a general contractor did prepare a preliminary estimate in June 1987 of $200,000 to $225,000. When Wisniewski presented his plan to Travelers at an April 1987 meeting, it immediately viewed the plan as excessive and rejected it without further consideration.

Wisniewski reviewed Travelers' modification proposal as prepared by Steve Lome. He found that it indicated limited modifications to the kitchen, garage, and bathroom which failed to serve claimant's needs. Specifically, Wisienewski found that Lome's plan failed to account for two wheelchair-bound individuals in the home who require a strict daily regime for bowel and bladder incontinence. Lome's plan also failed to provide full access for two wheelchairs in the hallways and in all rooms and ignored the safety and accessibility needs of a disabled person. Lome's plan, in his view, failed for "lack of safety" and "lack of room to function." Finally,

the plan violated the Hoffman Estates building code provision which designates the required space between the building and the lot line.

Michael Dixon, a licensed architect who has remodeled three buildings to accommodate wheelchaired persons, testified for claimant that his practice involves renovating existing buildings, often with considerations for handicapped accessibility. He stated that he found Wisniewski's plan to be reasonable and necessary for claimant's needs. In Dixon's view, the plan requires remodeling 800 square feet and adding 1,200 square feet, at the cost of $75 to $100 per square foot. The three Illinois homes Dixon built or remodeled for wheelchair accessibility cost $600,000, $350,000 and $300,000 respectively, exclusive of the property cost.

Steven Lome was hired by Travelers to develop plans for claimant's home. He is not an architect, but rather calls himself an "accessibility consultant." He testified that he relied upon his "not finished drawings" to estimate the cost at approximately $85,000. These preliminary plans involved the following: remodeling, but not enlarging, the kitchen; widening doorways; enlarging and remodeling bathroom; enlarging living room; and adding a front door ramp and a lift from the garage. His plan provides overall enlargement by about 100 square feet. He viewed the bathroom as the biggest difference between his and claimant's plans. He also stated that while claimant's plan would significantly increase the size of the home, Lome's plan did not propose to change either the configuration or layout, but rather worked within the existing structure. Although Lome believes claimant needs a back door in case of a fire, his plan did not include one, nor does he know whether the home has more than two exits. Lome did not talk to claimant before developing his plan, nor did he consult the village regarding its building code. He visited the home for about three hours, although the record does not indicate whether this occurred prior to the development of his plan.

I.C. Newson, Travelers' manager of claims, testified that Travelers initially projected $80,000 to remodel claimant's home. However, because it was unable to present a plan, it attempted to settle in December 1987 by offering claimant $60,000 to remodel or modify his home and $10,000 to cover his rent expense at the Institute.

Hortense Lefkovitz, a nurse, testified for respondents that she showed Dr. Roth Wisniewski's and Lome's plans. Dr. Roth reviewed each item in Wisniewski's plan to determine what was medically necessary. Dr. Roth told Lefkovitz that Lome's plans were "adequate."

Respondents contend on appeal that the Commission's award of $275,491 pursuant to section 8(a) of the Act was against the manifest weight of the evidence.

■ We will not disturb the Commission's findings unless they are contrary to the manifest weight of the evidence. (*Berry v. Industrial Comm'n* (1984), 99 Ill. 2d 401, 459 N.E.2d 963.) Further, it is the Commission's function to resolve conflicts in the evidence, draw inferences from witness testimony and determine witness credibility and the weight to be accorded to such testimony, and its findings will not be disturbed unless against the manifest weight of the evidence. *Paganelis v. Industrial Comm'n* (1989), 132 Ill. 2d 468, 548 N.E.2d 1033.

■ Respondents claim that Wisniewski's plan was not based on medical opinion and is, thus, against the manifest weight of the evidence. We do not view the evidence in this light. Although Wisniewski admittedly did not rely on a doctor's recommendations in formulating his remodeling plan for claimant's home, he spent considerable time with claimant in order to understand his disabilities and his medically related needs. He familiarized himself with claimant's home, specifically the limitations of wheelchair movements in the home. He also watched claimant and his family functioning in the home. In addition, he relied upon his own expertise and substantial experience in designing space for handicapped persons.

Respondents do not argue that Wisniewski's reliance on a medical opinion would have insured that its elements were reasonable and necessary or would have improved his plan. Rather, they maintain that Wisniewski did not rely on and claimant did not offer any medical opinion. Even though Wisniewski did not rely on medical opinion, his plans and Dr. Roth's testimony as to claimant's needs are entirely consistent. While Dr. Roth described Travelers' plan as adequate, he made specific recommendations, among which included: a bathroom for claimant and his daughter, sufficiently wide hallways, at least two exits and ramps to outside, and separate beds for claimant and his wife. Wisniewski's plan addresses each of these suggestions. Further, on review the Commission eliminated items that it concluded were not reasonable and necessary, including an elevator, skylight, security system, lighting equipment and waterbed. Therefore, the Commission's award as modified accounted for both Wisniewski's technical expertise and Dr. Roth's medical opinion.

■ Respondents also urge that the Commission's award, which is based upon Wisniewski's "rough estimate," and does not rely

upon a contractor's bid, is, therefore, too speculative upon which to base an award. We disagree. Our review of claimant's modification proposal reveals a precise, comprehensive plan. Wisniewski prepared a schedule of construction costs which detailed 22 items by category, including legal fees, building permits and hotel costs for the period during construction. He developed his estimate from his substantial experience in estimating costs and consulted cost estimates and suppliers.

Other evidence supports the Commission's award based upon this estimate. Although Wisniewski did not submit a general contractor's bid, a preliminary estimate prepared by a general contractor in June 1987 estimated $200,000 to $225,000 for the remodeling cost. Michael Dixon, an architect experienced in developing space for wheelchair-confined persons, testified that claimant's plan was adequate and specifically projected a cost for the proposal. He estimated that the construction area involved 2,000 square feet at the cost of $75 to $100 per foot, totaling $150,000 to $200,000. Although the Commission's award exceeds this amount, Dixon's testimony supports Wisniewski's estimate. Further, despite the lack of an actual contractor's bid, the Commission reasonably could have inferred that estimates of experienced architects such as Wisniewski and Dixon were based upon past experience and substantial expertise.

Respondents also suggest that claimant's plan is excessive, incorporating items which are not reasonable and necessary. The record reveals, however, that the Commission thoroughly reviewed the plan and that its final award reflects several modifications. Despite claimant's estimate of $323,941, the arbitrator awarded $299,200. The Commission further reduced the amount after considering evidence submitted to it. In fact, the amount was modified to eliminate certain items that Dr. Roth deemed unnecessary. The record shows that the Commission scrutinized the plan and eliminated items it considered excessive. As such, we cannot conclude that the Commission erred in finding the proposal as modified "necessary and not excessive."

Although we may set aside the Commission's findings when contrary to the manifest weight of the evidence, we will not substitute our judgment for that of the Commission, whose function it is to judge witnesses' credibility and determine the weight to be given to their testimony. (*Chicago Rotoprint v. Industrial Comm'n* (1987), 157 Ill. App. 3d 996, 509 N.E.2d 1330.) The Commission was presented with the modification plans and testimony of Wisniewski,

Dixon and Lome. The Commission was entitled to accept the opinions of Wisniewski and Dixon, and reject those of Lome. Indeed, the record reveals that Lome's plan created only minimal additional space to accommodate claimant's wheelchair, lacked sufficient safety features, and failed to provide two wheelchair-accessible bathrooms. Further, Lome did not talk to claimant prior to developing his plan and was only minimally familiar with the home. The Commission had ample evidence to find Travelers' plan inadequate, and we cannot conclude that the Commission's award was against the manifest weight of the evidence.

■■ We also consider respondents' claim that section 8(a) of the Act has not been construed to cover payment for remodeling an employee's home. Section 8(a) provides in pertinent part:

"The employer shall also pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto. If as a result of the injury the employee is unable to be self-sufficient the employer shall further pay for such maintenance or institutional care as shall be required." Ill. Rev. Stat. 1987, ch. 48, par. 138.8(a).

■■ Although we recognize that this precise issue has not been addressed by an Illinois court to date, we conclude that the Commission's award is in keeping with the statute's purpose, to fully compensate employees for work-related injuries.

This court recently addressed whether section 8(a) allowed for compensation for home care services rendered by a nonrelative even though the statutory language does not explicitly so provide. (*Burd v. Industrial Comm'n* (1991), 207 Ill. App. 3d 371.) That opinion is instructive here. In *Burd*, claimant's work injury rendered him a paraplegic. His treating doctor prescribed nine home modifications to allow claimant to live independently without nursing care in his home, which was valued at $6,000. These changes, however, were never made, apparently due to concern over the value of the home. According to his doctor, claimant could not exist in the home without the assistance of either a "home care service or significant other." When assistance from home care services was terminated, claimant's live-in fiancee began assisting claimant to enter and exit the home, bathe and do general housekeeping. At the hearing, the arbitrator found that the home care services were reasonable and necessary and ordered employer to pay. In addition, the arbitrator found that claimant's fiancee was not entitled to payment for the approximately 3,000 hours spent in caring for claimant be-

cause she had previously occupied the same residence as claimant prior to the injury. On review, the Commission found that the evidence of the need for 24-hour care was unrebutted and that the fiancee was not obligated to provide that care, and accordingly awarded claimant $21,924 for these services. The circuit court of Peoria County found the award against the manifest weight of the evidence and remanded with instructions to affirm the arbitrator's decision. The Commission affirmed the arbitrator's earlier award and the circuit court confirmed the Commission. Claimant appealed.

This court first noted the lack of cases in Illinois addressing whether section 8(a) of the Act covered compensation for home care services rendered by a nonrelative. We reviewed cases from other jurisdictions, which allowed such awards but distinguished between nursing attendance and services which essentially entailed housekeeping. After discussion of these cases, we concluded that the fiancee's services were required by claimant's injury and were not mere household duties, that the record supported the award, and that it was permissible despite the absence of statutory language.

Here we are confronted with compensation for an item not explicitly recognized in section 8(a), nor addressed by this court to date. We conclude that despite the lack of explicit statutory language in section 8(a) referring to home modifications, a fair reading of the statute does not preclude such compensation, nor is the result contrary to the statute's general purpose of fully compensating employees for work-related injuries.

Moreover, our review of cases from other jurisdictions indicates that courts are inclined to grant unusual relief, such as home modification, when unique circumstances exist and the claimant supports his request with competent testimony.

In *Squeo v. Comfort Control Corp.* (1985), 99 N.J. 588, 494 A.2d 313, although relevant statutes made no express provision, the court ordered the employer to construct a self-contained modular home at an estimated $65,000 cost for an employee rendered quadriplegic from a work-related accident. The statute required employer to furnish the injured worker "such medical, surgical and other treatment, as shall be necessary to cure and relieve the worker of the effects of the injury and to restore the functions of the injured member where such restoration is possible" and to supply "an artificial limb or other appliance" when it may partially or totally relieve the effects of the claimant's permanent injury. (N.J. Stat. Ann. §34:15—15 (West 1988).) The evidence suggested that claimant, who had attempted suicide while in a nursing home,

would benefit from such change and that this was important to his physical and psychological health. The court held:

"[U]nder certain unique circumstances, when there is sufficient and competent medical evidence to establish that the requested 'other treatment' or 'appliance' is reasonable and necessary to relieve the injured worker of the effect of his injuries, the construction of an apartment addition may be within the ambit of [the statute]." *Squeo*, 99 N.J. at 604, 494 A.2d at 322.

Indeed, a noted commentator has written:

"Medical benefits ordinarily include not only medical and hospital services and nursing care, which may be compensable even when supplied at home by a member of claimant's family, but also necessary incidentals such as transportation, apparatus, supplies, and *sometimes even special housing facilities*." (Emphasis added.) 2 A. Larson, Workmen's Compensation Law §61.00 (1989).

See also *R & T Construction Co. v. Judge* (1990), 82 Md. App. 700, 573 A.2d 96 (term "medical treatment" allowed for home modifications and special van); *Langford v. Williams Rogers, Inc.* (1988), 144 A.D.2d 785, 534 N.Y.S.2d 761 (language "other attendance of treatment" allowed for reasonable modifications of claimant's home to facilitate use of wheelchair); *Derebery v. Pitt County Fire Marshall* (1986), 318 N.C. 192, 347 S.E.2d 814 (term "other treatment or care" included wheelchair-accessible housing); *Peace River Electric Corp. v. Chaote* (Fla. App. 1982), 417 So. 2d 831 (allowed claimant's request for rent-free use of wheelchair-accessible home); *Cf. Low Splint Coal Co. v. Bolling* (1982), 224 Va. 400, 297 S.E.2d 665 (terms "other necessary medical attention" and "vocational rehabilitation training services" did not include structural modifications to home).

We find persuasive these cases in which terms such as "medical treatment" or "medical services" are broadly interpreted. Further, we believe that such interpretation is consistent with the mandate to liberally interpret the Act in favor of those it is designed to protect. (See *General American Life Insurance Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 359, 454 N.E.2d 643.) We, therefore, conclude that the Commission properly ordered home modifications within the meaning of section 8(a). We do, however, caution that only unusual cases warrant the extraordinary relief granted here.

■ In their petition for rehearing, respondents challenged, among other things, the manner of payment of $275,491 to claim-

ant to remodel his home. In his response, claimant suggested setting up an escrow. The Commission's decision, however, does not provide a method for payment of the home modifications.

We believe that a proper procedure must be established for the payment of $275,491 to claimant to remodel his home. Consequently, we remand the matter with directions to establish such a procedure, whether by escrow or any other means deemed prudent.

For the above reasons, we affirm the judgment of the circuit court of Cook County and remand the cause for further proceedings consistent with these holdings.

Judgment affirmed and cause remanded with directions.

McCULLOUGH, P.J., WOODWARD, STOUDER, and LEWIS, JJ., concur.