BEELMAN TRUCKING, Appellant, v. ILLINOIS WORKERS' COMPENSA-
TION COMMISSION *et al.* (Jack G. Carson, Appellee).

Fifth District (Illinois Workers' Compensation Commission Division)
No. 5—07—0071WC

Opinion filed March 31, 2008.—Rehearing denied May 9, 2008.

DONOVAN, J., concurring in part and dissenting in part.

Robert N. Hendershot, of Evans & Dixon, of St. Louis, Missouri, for appellant.

Mark Glass, of Glass & Korein, LLC, of East St. Louis, for appellee.

Charles G. Haskins, Jr., and John W. Powers, both of Cullen, Haskins, Nicholson & Menchetti, P.C., of Chicago, for *amicus curiae*.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

The claimant, Jack G. Carson, sought benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq*. (West 2004)), after he sustained severe injuries in a motor vehicle accident that occurred while he was driving for the respondent, Beelman Trucking (Beelman), on April 19, 1995. Carson's injuries included a burst fracture at C5-6 resulting in the complete loss of use of both legs and the near complete paralysis of the left arm and a degloving injury to

the right arm that required a midhumeral amputation. The parties agree that Carson's injuries arose out of and in the course of his employment with Beelman. There is disagreement in regard to the appropriate method and scope of the compensation that Carson is entitled to receive under the Act. The disputed issues were whether Carson was entitled to temporary total disability (TTD) or maintenance benefits during the period of vocational rehabilitation even though he was receiving statutory permanent total disability (PTD) benefits under section 8(e)(18) of the Act (820 ILCS 305/8(e)(18) (West 2004)); whether Carson was entitled to awards under section 8(e)(10) of the Act (820 ILCS 305/8(e)(10) (West 2004)) for the losses of each arm in conjunction with a PTD award under section 8(e)(18); whether the respondent is liable under section 8(a) of the Act (820 ILCS 305/8(a) (West 2004)) for a voice-activated computer system; and whether the respondent is liable under section 8(a) to pay that portion of Carson's motor vehicle insurance premium pertaining to the handicap modifications endorsement.

Following a hearing on October 27, 2005, arbitrator Jennifer Teague awarded statutory PTD benefits of $489.69 per week for life under section 8(e)(18), a benefit of $396.89 for 250 weeks pursuant to section 8(e)(10) for the above-elbow surgical amputation of the right arm, and a benefit of $396.89 for 235 weeks pursuant to section 8(e)(10) for the paralysis of the left arm just below shoulder level. Arbitrator Teague also awarded $12,674.35 to reimburse Carson for the expenses of the voice-activated computer system and $708 to cover the costs of the handicap modifications endorsement to his automobile insurance premium. The computer and premium expenses were awarded pursuant to section 8(a) of the Act. The arbitrator denied Carson's claim for TTD or maintenance benefits and his motion for penalties and attorney fees.

The following factual recitation is taken from the evidence presented at the arbitration hearing on October 27, 2005.

Jack Carson, an over-the-road trucker, was involved in a motor vehicle accident on April 19, 1995, while driving for the respondent. He was ejected from his vehicle and he sustained severe and permanent injuries. Carson suffered a burst fracture at C5-6 resulting in a complete loss of use of both legs and the near complete paralysis of the left arm. Carson sustained a severe degloving injury to the right arm that required surgical treatments, including a below-elbow amputation of the right arm in April 1995 and ultimately a midhumeral amputation of the right arm in May 1995. In addition, Carson suffered a near avulsion of his right ear and an injury to his right chest wall. As a result of the spinal injury, Carson has no sensation below the

level of his midchest and his left arm is paralyzed below the level of the shoulder. This condition is referred to as tetraplegia. Carson does not have a prosthesis for his right arm because he lacks the shoulder strength to make it functional. At the time of the accident, Carson was 30 years old, married, and the father of a two-year-old boy. He was earning $748.02 a week.

The medical records and vocational reports show the accident left Carson dependent with regard to self-care and activities of daily living. Carson requires regular monitoring for complications that often arise from his conditions, including urinary tract infections, respiratory infections, skin breakdown, and sleep issues. Beelman continues to provide medical and adjuvant services pursuant to section 8(a). Carson has full-time nursing assistance in his home, a motorized wheelchair, and a customized van for transportation. Modifications were made to his home to accommodate his wheelchair.

The medical and rehabilitation records in evidence show that as early as September 1996, Carson's attending physician, Thomas F. Lieb, M.D., strongly recommended that Carson obtain a computer and environmental control unit to allow him to have some control over his household environment, to access information and to communicate online, and to have communication for safety and security reasons. In his progress notes, Dr. Lieb acknowledged that the system would not alleviate the need for attendant care, but he thought that it could reduce the amount of time that the attendant was needed. Dr. Lieb noted that the system would permit Carson some measure of independence and that it would be important for Carson's health and emotional well-being. Dr. Lieb indicated that Carson was not a candidate for a right arm prosthesis because he lacked the shoulder control and strength and because a prosthesis would interfere with the operation of the power wheelchair. Rehabilitation and occupational therapists concurred in the recommendation for the voice-activated computer and environmental control unit. Beelman would not approve payment for the computer and environmental control unit. Carson obtained it at his own expense in 2001. According to the invoices and billing statements, the costs for the equipment, installation, and training totaled $12,674.35.

Carson testified briefly during the hearing. He stated that he is no longer married. He lives alone. His son visits with him three or four times a week and on weekends. Carson testified that he obtained the computer and environmental control system in 2001 and that he paid for the equipment out of his pocket. Carson stated that the system enables him to operate his telephone, television, VCR, and lamp with his computer. He is also able to send and receive e-mail and read

newspapers and other materials online. Carson stated that he is unable to read a book or paper unless someone holds it and turns the pages. Carson said that he is unable to drive his van and that he is homebound unless someone drives him. Beelman provided the modified van to accommodate his wheelchair. Carson pays the insurance premium on the van, which includes a biannual charge of $708 to cover a handicap modifications endorsement.

On review, the Workers' Compensation Commission (Commission) affirmed and adopted the arbitrator's decision with one modification. The Commission entered an order increasing the award for the loss of the right arm from 250 weeks to 300 weeks, finding that a prosthetic device would not restore some functional use of Carson's right arm. The circuit court of Clinton County confirmed the decision of the Commission. Beelman's appeal presents the following issues: (1) whether the Commission's decision to award benefits for specific losses pursuant to section 8(e)(10) in conjunction with the award of statutory permanent total disability benefits pursuant to section 8(e)(18) to compensate for distinct injuries sustained in a single accident is contrary to the law; (2) whether the Commission's decision to increase the section 8(e)(10) award for the above-elbow amputation of the right arm from 250 weeks to 300 weeks is contrary to the law; (3) whether the Commission's award for the costs of the voice-activated computer system is contrary to the law; and (4) whether the Commission's award of the additional insurance premium for the handicap modifications endorsement is contrary to the law.

The first issue addressed is whether the Commission erred in awarding benefits under section 8(e)(10) in conjunction with the statutory permanent total disability award under section 8(e)(18) where the injuries were incurred in a single accident. Carson sustained numerous injuries, the most severe of which were a cervical spinal injury and a degloving injury to the right arm. The C5-6 burst injury to the cervical spine resulted in the complete loss of use of Carson's legs and almost complete paralysis of his left arm. The disability from this injury falls within the ambit of section 8(e)(18) of the Act.

Section 8(e)(18) provides:

"The specific case of loss of both hands, both arms, or both feet, or both legs, or both eyes, or of any two thereof, or the permanent and complete loss of the use thereof, constitutes total and permanent disability, to be compensated according to the compensation fixed by paragraph (f) of this Section. These specific cases of total and permanent disability do not exclude other cases.

Any employee who has previously suffered the loss or permanent and complete loss of the use of any of such members, and in a

subsequent independent accident loses another or suffers the permanent and complete loss of the use of any one of such members[,] the employer for whom the injured employee is working at the time of the last independent accident is liable to pay compensation only for the loss or permanent and complete loss of the use of the member occasioned by the last independent accident." 820 ILCS 305/8(e)(18) (West 2004).

The respondent argues that the award of 300 weeks pursuant to section 8(e)(10) is contrary to law. The facts show that award was based upon the injuries incurred in the same incident which resulted in the total and permanent disability awarded pursuant to section 8(e)(18). We agree with the respondent.

The claimant was awarded compensation pursuant to section 8(e)(18), "according to the compensation fixed by paragraph (f)."

The supreme court in *Freeman* discussed section 8(e)(18) in the context of subsequent injuries, stating:

"[I]nasmuch as adjudications of permanent total disability under section 8(e)(18) are to be made without regard to a worker's future employment prospects, and awards under that section do not reflect actual unemployability, the Workers' Compensation Act anticipates that a recipient of section 8(e)(18) benefits may in addition recover temporary total disability benefits should he retain or recover his ability to earn wages only to lose that ability because of a work-related accident. In these circumstances, the Act contemplates that the employee, notwithstanding the previous award, is to be compensated for his current loss of earning power." *Freeman United Coal Mining Co. v. Industrial Comm'n*, 99 Ill. 2d 487, 495, 459 N.E.2d 1368, 1372-73 (1984).

In *Arview v. Industrial Comm'n*, 415 Ill. 522, 534-35, 114 N.E.2d 698, 704 (1953), the supreme court, in discussing section 8(e)(18), stated:

"[I]t would be specious reasoning to conclude that the loss of more than two members would not constitute permanent and total disability, but revert to a condition of specific loss. The loss of the additional members over and above the two specified in the act cannot convert such statutory permanent and total disability into a case of specific losses. That the employee disabled by the loss of more than two members may sustain greater hardship than an employee who has lost only two members should be recognized by the legislature and provision made for him in the act. However, this circumstance does not modify his condition into one of specific losses under the present law, or give him the right to elect whether he will itemize his disabilities or claim permanent total disability. There is no provision in the act giving any employee, previously

handicapped or otherwise, the right to elect whether he will claim compensation for the cumulative loss of members sustained in one accident, or claim statutory permanent and total disability. Any such interpretation of the act would render meaningless both the provision relating to the sum payable for permanent and total disability and the provision defining the loss, or loss of use of two members, or the sight of both eyes as permanent total disability. An employee so disabled could either add up the compensation due for loss or loss of use of members sustained in an accident and compare that sum with the amount payable to him for permanent total disability, and then label his condition so as to procure the greatest amount of compensation. It is evident that such a procedure is not within the purport of the act."

■ Section 8(e)(18) concerns the award of permanent benefits resulting from the same accident. The employer is correct in arguing that the Commission does not have the power to award benefits for specific losses of permanent partial disability and permanent total disability resulting from that same accident. The Commission erred in awarding section 8(e)(10) benefits in conjunction with section 8(e)(18) benefits awarded for the injuries sustained in a single accident.

■ The next issue is whether the Commission's decision to award the expenses of a voice-activated computer and environmental control system was proper under section 8(a) of the Act. Section 8(a) of the Act requires the employer to pay for all reasonable medical services and rehabilitative services that are necessary to cure or relieve the effects of the injury. Whether an expense constitutes a necessary medical or rehabilitative expense under section 8(a) is a question for the Commission. Section 8(a) states in pertinent part as follows:

"The employer shall also pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto. If as a result of the injury the employee is unable to be self-sufficient the employer shall further pay for such maintenance or institutional care as shall be required." 820 ILCS 305/8(a) (West 2004).

In Illinois, the employer's obligation to provide medical and rehabilitative services has been broadly interpreted to include nursing care, home care, and expenses for modifications to a home to make it accessible. See *Zephyr, Inc. v. Industrial Comm'n*, 215 Ill. App. 3d 669, 576 N.E.2d 1 (1991); *Burd v. Industrial Comm'n*, 207 Ill. App. 3d 371, 566 N.E.2d 35 (1991).

In this case, Dr. Lieb, the occupational therapists, and the rehabilitative consultant strongly recommended the computer system and the environmental control unit as reasonable and necessary appli-

ances to improve the claimant's physical and psychological health and well-being. There is overwhelming competent evidence in the record to support the Commission's conclusion that the appliances were reasonable and necessary to relieve the effects of the injury. The Commission's award is in keeping with the purpose of section 8(a) and the overall purpose of the Act to fully compensate an employee for work-related injuries. In this case, the computer and environmental control system are appliances that have restored some independent function to Carson. These devices have benefitted his physical and psychological health and well-being. The award is clearly warranted under the unique circumstances in this case.

■ The next question is whether the award for that portion of the automobile insurance premium covering the handicap modifications endorsement is appropriate under section 8(a) of the Act. According to the record, Beelman provided Carson with a van that was designed to accommodate his wheelchair. Carson is not able to drive the van. He is dependent on someone to drive the van. The van is covered under an automobile policy that Carson purchased. There is a handicap modifications endorsement that covers the customized equipment in the event of a direct and accidental loss. The Commission found no legal or logical basis to exclude from an employer's section 8(a) obligations the duty to cover that portion of the insurance premium pertaining to the modifications to the vehicle which were necessary to accommodate Carson's work-related injuries and disabilities. The circuit court declined to find the Commission's decision contrary to the law or the manifest weight of the evidence in absence of controlling authority.

This is a question that has not been directly addressed by the Illinois courts. Beelman notes that the courts from two other jurisdictions have determined that the employee should bear ordinary expenses for repair, fuel, title, and insurance because the employee controls the vehicle and has some individual control over these expenses (*Mickey v. City Wide Maintenance*, 996 S.W.2d 144, 149-50 (Mo. App. 1999), *overruled by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. 2003); *Manpower Temporary Services v. Sioson*, 529 N.W.2d 259 (Iowa 1995)), and it suggests we adopt the conclusions of those courts. We disagree. In this case, Carson would not have had to purchase a modified van were it not for his work-related injuries. Carson presented evidence of the specific cost of the handicap modifications endorsement. This cost is itemized and it is separate from the liability, comprehensive, and collision coverage provided under the auto policy. Carson continues to bear the ordinary expenses for maintenance, fuel, and motor vehicle insurance. However, the handicap

modifications endorsement is a unique expense that is incurred as a result of the work-related injuries and disabilities. An award to cover the costs for a handicap modifications endorsement under the unique circumstances presented is in keeping with the purpose of section 8(a) and is not contrary to the law.

The section 8(e)(10) award is set aside. In all other respects, the order of the circuit court is affirmed.

Affirmed in part and reversed in part.

HOFFMAN, GROMETER, and HOLDRIDGE, JJ., concur.

JUSTICE DONOVAN, concurring in part and dissenting in part:

I concur in the majority opinion in all aspects, save one. I would affirm the decision to award a specific loss under section 8(e)(10) in conjunction with a statutory permanent total disability award under section 8(e)(18) because I find that it is supported by the facts and the law.

Section 8(e)(18) provides that the loss of both hands, both arms, both feet, both legs, both eyes, or any two thereof, or the permanent and complete loss of use thereof, constitutes total and permanent disability. 820 ILCS 305/8(e)(18) (West 2004). Disability under section 8(e)(18) is construed to be permanent and total disability by legislative pronouncement. *Freeman United Coal Mining Co. v. Industrial Comm'n*, 99 Ill. 2d 487, 492-93, 459 N.E.2d 1368, 1371 (1984); *Scandroli Construction Co. v. Industrial Comm'n*, 54 Ill. 2d 395, 399, 297 N.E.2d 150, 153 (1973). A section 8(e)(18) award does not consider a measure of the claimant's employability and does not require that an employee be wholly and permanently incapable of work. *Scandroli Construction Co.*, 54 Ill. 2d at 399, 297 N.E.2d at 153; *Freeman United Coal Mining Co.*, 99 Ill. 2d at 493-95, 459 N.E.2d at 1371-73. The intent of section 8(e)(18) is not simply to replace lost earnings; it is " 'broad enough to accommodate the pain and inconvenience[, rather than actual disability,] that accompany [the loss of two members] even though the employee remains able to work.' " *Freeman United Coal Mining Co.*, 99 Ill. 2d at 492-93, 459 N.E.2d at 1371, quoting *National Lock Co. v. Industrial Comm'n*, 62 Ill. 2d 51, 56-57, 338 N.E.2d 405, 408 (1975).

In *Freeman United Coal Mining Co.*, the Illinois Supreme Court upheld an award of temporary total disability benefits to an employee who returned to work after having been awarded section 8(e)(18) benefits for a bilateral amputation of both legs and who subsequently sustained another work-related injury. The supreme court stated that

the subsequent injury destroyed the claimant's earning power and income stream and should not be " 'suffered without recompense.' " *Freeman United Coal Mining Co.*, 99 Ill. 2d at 494, 459 N.E.2d at 1372, quoting *Jones v. Cutler Oil Co.*, 356 Mich. 487, 502, 97 N.W.2d 74, 81 (1959). The question in *Freeman United Coal Mining Co.* involved the award of TTD benefits. The supreme court noted that it had not been called upon to decide whether the claimant would be entitled to any permanency benefits and that the issue would be saved for another day. *Freeman United Coal Mining Co.*, 99 Ill. 2d at 495, 459 N.E.2d at 1372.

Nevertheless, the Illinois Supreme Court has affirmed the Commission's decision to award concurrent permanency benefits in cases where the claimant suffered distinct injuries in a single accident. See, e.g., *C.S.T. Erection Co. v. Industrial Comm'n*, 61 Ill. 2d 251, 335 N.E.2d 419 (1975); *R.C. Mahon Co. v. Industrial Comm'n*, 45 Ill. 2d 480, 259 N.E.2d 274 (1970); *J.J. Grady Co. v. Industrial Comm'n*, 46 Ill. 2d 471, 263 N.E.2d 809 (1970).

In the case at bar, the claimant sustained numerous injuries in a single accident. It is beyond debate that the injury to the cervical spinal and the degloving injury to the right arm are concurrent and distinct injuries. The degloving injury to the right arm required multiple surgeries, including an above-elbow amputation. It resulted in a specific loss of the type contemplated under section 8(e)(10). The C5-6 burst fracture resulted in the complete loss of use of the claimant's legs and the near-complete paralysis of his left arm. A statutory permanent total disability award under section 8(e)(18) of the Act is appropriate because there is no evidence that the disability resulting from the C5-6 burst fracture would have left the claimant wholly incapable of work. The degloving injury to the right arm resulted in an additional impairment to the claimant's earning power and warrants additional compensation. This is not a case where concurrent awards would represent a double recovery for the same injury. This is not a case where the maxim "a workman can only be 100% disabled" applies. There is no evidence that either injury, by itself, would have left the claimant without a market for his skills, and thus completely unemployable. To declare, as the majority has, that a statutory permanent and total disability award under section 8(e)(10) precludes an additional permanency benefit where a distinct injury results in additional impairment of earning power is to create an exception to the employer's liability that violates the letter and spirit of the Act.

After considering the reasoning of the supreme court in the above cases and the remedial purposes of the Act, I conclude that the deci-

sion to award a specific loss under section 8(e)(10) in conjunction with a statutory permanent total disability award under section 8(e)(18) is proper under the law and the facts.

I would also affirm the circuit court's decision to confirm the Commission's decision to increase the section 8(e)(10) award for the above-elbow amputation of the right arm from 250 weeks to 300 weeks. Section 8(e)(10) of the Act provides for an additional award where the accidental injury results in "the amputation of an arm at the shoulder joint, or so close to [the] shoulder joint that an artificial arm cannot be used." 820 ILCS 305/8(e)(10) (West 2004). The medical evidence shows that the above-the-elbow amputation left the claimant without adequate anatomical structures and sufficient strength to support a prosthetic device. The Commission's decision to award additional weeks of compensation under section 8(e)(10) is supported by the evidence and is not contrary to the law.

Accordingly, I would affirm the decision of the circuit court in all respects.