PLANTATION MANUFACTURING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Maria Razo, Appellee.)

Second District (Industrial Commission Division)   Nos. 2—97—0018WC through 2—97—0020WC cons.

Opinion filed December 29, 1997.—Rehearing denied March 18, 1998.

Vito D. DeCarlo, of Ganan & Shapiro, P.C., of Chicago, for appellant.

Bryan S. Flangel and Arthur A. Phillips, both of Arthur A. Phillips, Ltd., of Chicago, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Claimant, Maria Razo, sought benefits pursuant to the Workers' Compensation Act (the Act) (820 ILCS 305/1 *et seq.* (West 1992)) for injuries sustained while in the employ of Plantation Manufacturing Company (Plantation). On August 21, 1985, Razo slipped on a wet floor and fell, injuring her back. She was ultimately diagnosed with a herniated disc. Her physician, Dr. Allan Minster, recommended lumbar surgery, but Razo declined. She did undergo a work hardening program and rehabilitation at Plantation's expense. An arbitration hearing was held on February 9, 1988. The arbitrator found Razo to be permanently partially disabled to the extent of 30% of the person as a whole and awarded temporary total disability (TTD) benefits for 54⁴/₇ weeks. This decision was confirmed by the Industrial Commission (the Commission).

On October 20, 1992, Razo filed a petition pursuant to section 8(a) of the Act, seeking an order requiring Plantation to pay for a lumbar surgery that her physician had prescribed but had not yet performed.

A hearing on Razo's section 8(a) petition was held July 15, 1993. Razo testified that since the date of her original arbitration hearing, the pain and numbness in her back had gotten worse. Razo also stated that at the time of arbitration she declined to have surgery because she feared death from anesthesia. Admitted into evidence were the results of a September 28, 1990, CT scan. According to the report, the scan revealed a central and right lateral herniated disc at L3-L4, which was not present in 1985, and a small central herniated disc at L4-L5. The test also indicated a spinal stenosis at the L4-L5 level which could possibly be made worse by a herniated disc. Oddly, the report concluded that the examination ruled out a herniated disc at the L3-L4 level, central and to the right. On November 9, 1990, Razo was examined by Dr. Marshall Matz at Plantation's request. His report indicated that in addition to an examination, he reviewed the September 28, 1990, CT scan. Dr. Matz opined that given the subjective nature of Razo's complaints, surgery offered only a remote probability of relief and would be hazardous.

On January 16, 1991, Dr. Minster had again recommended surgery based on the failed conservative treatments, two ineffective epidural steroid injections, physical therapy and work hardening that worsened Razo's symptoms, and no work since 1985. Dr. Minster had scheduled Razo for surgery on November 9, 1991, but Plantation refused to authorize payment for the procedure based on Dr. Matz's report.

Razo was examined on October 28, 1992, by Dr. Irwin Barnett. He found reduced lumbar range of motion, diminished sensation at the right thigh and anterior right leg below the knee, and atrophy in the right thigh and calf. Based on his examination and an X ray, Dr. Barnett opined that the clinical and X-ray findings indicated the possibility of a herniated disc at L3-L4 and/or L4-L5, and recommended that surgery be considered. Dr. Barnett concluded that Razo had sustained a major loss of the person as a whole.

Dr. Matz examined Razo again on November 27, 1992. He found some limited range of motion and weakness in her legs, no sensory loss and no atrophy. He concluded that her complaints were not substantiated by the neurological examination. He also opined that Razo's choice of no work since 1985 was motivational in nature because there was no evidence of residual organic low back impairment. Dr. Matz further opined that Razo needed no further medical treatment for any work accident residuals. Based on Dr. Matz's reports, Plantation declined to pay for Razo's prescribed surgical treatment.

On February 17, 1994, the Commission ruled that Razo had established that her condition was causally connected to the August 21, 1985, work accident and, relying in part on *Zephyr, Inc. v. Industrial Comm'n*, 215 Ill. App. 3d 669, 576 N.E.2d 1 (1991), ordered Plantation to pay for the prescribed surgery. The circuit court of Lake County remanded the cause to the Commission for a review of the decision and issue of an order regarding the Commission's findings under section 8(a). The Commission subsequently ordered Plantation to provide written authorization to the surgeon and to pay all reasonable and necessary bills related to that surgery. The circuit court again remanded the cause, this time for a determination of Razo's ability to pay. At a hearing on November 30, 1995, Razo testified that she had no health insurance, received no public aid, and had no money to pay for the surgery. The Commission found that Razo was unable to pay for the surgery but noted its opinion that a claimant's ability to pay for medical care was not relevant to an employer's obligation under section 8(a). The circuit court confirmed the decision.

■ On appeal, Plantation first argues that section 8(a) of the Act does not require it to pay for future, speculative medical costs not yet incurred. Plantation contends that both the plain language of section 8(a) and the statute's legislative history support its position.

Section 8(a) of the Act provides in relevant part:

> "The employer shall provide and pay for all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter *incurred*, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury. The employer shall also pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto. If as a result of the injury the employee is unable to be self-sufficient the employer shall further pay for such maintenance or institutional care as shall be required." (Emphasis added.) 820 ILCS 305/8(a) (West 1994).

■ Plantation argues that the language of the statute is plain and unambiguous and precludes awards for prospective medical treatment. Specifically, Plantation maintains that the word "incurred" is in the past tense, demonstrating the legislature's intent that the employer's liability for medical expenses be limited to those already provided for prior to arbitration. In support of its argument, Plantation points to the legislative history of section 8(a), as well as other sections of the statute that speak in the past tense.

The word "incurred" was added to section 8(a) by Public Act 79—79, effective July 1, 1975. Pub. Act 79—79, § 1 (eff. July 1, 1975). The Senate debates on Public Act 79—79, Plantation argues, demonstrate that the legislature added the word "incurred" to limit an employer's liability for prospective medical treatment. Plantation has included the text of the debate in an appendix in its brief. Reviewing the debate, we conclude that it does not support Plantation's position. The debate indicates that the practice of the employer affording the injured worker medical care shall continue unless the employee later on elects to secure his own medical care. Nothing in the debate indicates any intent to limit the employer's liability for medical care to that already provided prior to arbitration.

Plantation also contends other parts of the statute, including the section on the employee's choice of medical treatment, also speak in the past tense. The consistent use of the past tense in reference to medical treatment, Plantation argues, further demonstrates the legislature's intent to limit the employer's liability for prospective medical treatment. Plantation misinterprets the statute. The term

"incurred," as used in the statute, refers to the necessity of the medical treatment or procedure having been incurred, not the costs thereof. Specific medical procedures or treatments that have been prescribed by a medical service provider have been "incurred" within the meaning of the statute, even if they have not yet been paid for. To limit the scope of section 8(a) to treatments already performed or paid for would be contrary to the remedial purpose of the Act and the mandate to interpret the Act liberally so as to affect that purpose. *Hardin Sign Co. v. Industrial Comm'n*, 154 Ill. App. 3d 386, 506 N.E.2d 1066 (1987).

Plantation next argues that the Commission misapplied our holding in *Zephyr v. Industrial Comm'n*, 215 Ill. App. 3d 669, 576 N.E.2d 1 (1991). Plantation maintains that *Zephyr* does not stand for the proposition that section 8(a) authorizes the Commission to award prospective medical expenses, only that the employer could be held liable for the remodeling of the injured employee's home even though such modifications are not explicitly authorized by section 8(a).

In *Zephyr*, the claimant sustained a work injury that resulted in the complete loss of use of both legs. The parties agreed that the claimant was permanently and totally disabled. The arbitrator ordered Zephyr to pay for the remodeling of the claimant's home, finding such changes "reasonable and necessary" for the claimant's physical, mental, and occupational rehabilitation under section 8(a). On appeal, Zephyr argued that this decision was contrary to the manifest weight of the evidence because, *inter alia*, the claimant's proposed modifications were based upon a rough estimate of costs and were therefore too speculative and uncertain upon which to base a dollar award against Zephyr, and section 8(a) did not cover payment for the remodeling of an employee's home. In rejecting these arguments we held that claimant's proposal was based upon a comprehensive plan and that the amount of the award was supported by the evidence, and that while the explicit language of 8(a) did not refer to home modifications, neither did a fair reading of the statute preclude such compensation, and the result was in keeping with the Act's purpose. *Zephyr*, 215 Ill. App. 3d at 676-79, 576 N.E.2d at 4-7.

Although the court in *Zephyr* did not specifically hold that section 8(a) authorized the Commission to award prospective medical expenses, the Commission's award was clearly prospective in nature as the expenses for modifying claimant's house had not yet been paid. *Zephyr* is illustrative of the fact that expenses need not have to have been paid to have been incurred.

■ Plantation next argues that even if section 8(a) gives the Commission the authority to grant prospective medical benefits, doing so

in the present case was contrary to the manifest weight of the evidence because the issue of reasonableness and necessity of such benefits was never litigated at the arbitration hearing and the medical evidence produced at the hearing on the section 8(a) petition does not support such an award.

At the hearing on Razo's section 8(a) petition, the reports of Drs. Minster and Barnett were submitted into evidence. Dr. Barnett opined that surgical intervention should be considered, and Dr. Minster's report indicated that Razo had two choices, live with the pain or have surgery, and that Razo chose surgery. The reports of Dr. Matz, indicating that surgery was unwarranted, were also admitted.

In its February 17, 1994, decision on Razo's section 8 petition, the Commission reviewed all of the evidence before it and specifically concluded that the prescribed surgery was reasonable and necessary. While the issue of reasonableness and necessity may not have been addressed at the arbitration hearing, it was before the Commission.

■ With respect to Plantation's argument that the medical evidence does not support the award, it is well settled that it is the province of the Commission to resolve conflicts in the medical evidence and its decision in that regard will not be set aside on review unless it is contrary to the manifest weight of the evidence. *Prairie Farms Dairy v. Industrial Comm'n*, 279 Ill. App. 3d 546, 664 N.E.2d 753 (1996).

> "The manifest weight of the evidence is that which is the clearly evident, plain and indisputable weight of the evidence. In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent." *McRae v. Industrial Comm'n*, 285 Ill. App. 3d 448, 451, 674 N.E.2d 512, 514 (1996).

Stated differently, a decision is contrary to the manifest weight of the evidence only when, after viewing the evidence in a light most favorable to the agency, the court determines that no rational trier of fact could have agreed with the agency's decision. *Beeler v. Industrial Comm'n*, 179 Ill. App. 3d 463, 467, 534 N.E.2d 408, 411 (1989), quoting *Board of Trustees of Southern Illinois University v. Knight*, 163 Ill. App. 3d 289, 291, 516 N.E.2d 991, 993 (1987).

■ Reviewing the record, we find that Dr. Minster's opinion, which the Commission found to be more persuasive than that of Dr. Matz, supports the Commission's determination that the surgery was reasonable and necessary. Plantation contends that the objective diagnostic tests ordered by Dr. Minster and upon which he relied do not support the need for surgery. Dr. Matz's opinion, Plantation maintains, is more persuasive because it is supported by objective

diagnostic evaluations. As we have frequently held, however, it is not the function of this court to reweigh the evidence and substitute our judgment for that of the Commission. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 561 N.E.2d 623 (1990).

■ We note that in its March 7, 1996, decision, the Commission ordered Plantation to provide written authorization to Dr. Minster to perform the surgery prescribed. This would leave Plantation with no recourse to challenge the reasonableness of the cost of the surgery. We therefore modify the decision of the Commission by eliminating the direction to execute such authorization. We find the surgery to be necessary and order Plantation to pay all reasonable costs in connection therewith.

■ Finally, we feel it necessary to comment on the circuit court's order remanding the cause for a determination of Razo's ability to pay and the Commission's notation that a claimant's ability to pay is not relevant to an employer's obligation under section 8(a). The Commission is correct. Nothing in section 8(a) limits the employer's obligation to pay for medical treatment, prospective or otherwise, to situations where the claimant cannot pay.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed as modified.

Affirmed as modified.

McCULLOUGH, P.J., and RAKOWSKI, COLWELL, and HOLDRIDGE, JJ., concur.