967 N.E.2d 848 (2012)
359 Ill. Dec. 818
HOLLYWOOD CASINO-AURORA, INC., Appellee,
v.
The ILLINOIS WORKERS' COMPENSATION COMMISSION et al. (Gill Vierickl-Iverson, Appellant).
No. 2-11-0426 WC.
Appellate Court of Illinois, Second District, Workers' Compensation Commission Division.
March 16, 2012.
*849 Christine M. Ory, Law Offices of Christine M. Ory, P.C., Wheaton, for Gill Vierickl-Iverson.
George F. Klauke Jr., Stacey E. Hill, Alholm, Monahan, Klauke, Hay & Oldenburg, LLC, Chicago, for Hollywood Casino.

OPINION
Justice HOFFMAN delivered the judgment of the court, with opinion.
¶ 1 The claimant, Gill Vierickl-Iverson, appeals from an order of the circuit court of Kane County which reversed a decision of the Illinois Workers' Compensation Commission (Commission) that awarded her $40,750 in penalties against her employer, Hollywood Casino-Aurora, Inc. (Hollywood), pursuant to section 19(k) of the Workers' Compensation Act (Act) (820 ILCS 305/19(k) (West 2006)). For the reasons which follow, we affirm the circuit court.
¶ 2 The claimant was employed by Hollywood as a cocktail waitress. On January 1, 1999, she suffered a crushing injury to her right foot while working. The claimant was diagnosed with reflex dystrophy of the right foot and leg. She was treated by Dr. Timothy Lubenow on referral from Hollywood's nurse case manager. During the course of his treatment, Dr. Lubenow implanted a spinal cord stimulator in the claimant.
¶ 3 The claimant filed an application for adjustment of claim pursuant to the Act (820 ILCS 305/1 et seq. (West 1998)), seeking benefits for the injuries she sustained on January 1, 1999. Following a hearing, the arbitrator issued a decision on November 19, 2004, awarding the claimant 147 weeks of temporary total disability (TTD) benefits, 75 weeks of permanent partial disability (PPD) benefits under section 8(d)(2) of the Act (820 ILCS 305/8(d)(2) (West 2002)) for a 15% loss of a person as a whole, and 69.75 weeks of PPD benefits under section 8(e) of the Act (820 ILCS 305/8(e) (West 2002)) for a 45% loss of use of her right foot. In addition, Hollywood was ordered to pay for the reasonable and necessary medical expenses incurred by the claimant, including the cost of the spinal cord stimulator. Neither party sought *850 a review of the arbitrator's decision, and as a consequence, it became the decision of the Commission. 820 ILCS 305/19(b) (West 2002).
¶ 4 Following the decision awarding her benefits, the claimant continued under the care of Dr. Lubenow. On December 22, 2006, Dr. Lubenow sent a letter to Paula Williams, a claims adjuster employed by Hollywood's workers' compensation insurance carrier. The letter stated that the claimant had "responded favorably" to the spinal cord stimulator, but that there were signs indicating that the stimulator's battery was nearing the end of its life and would likely need replacement "within the first quarter of 2007." In addition, the letter stated:
"The hospital cost for replacing the pulse generator battery, including battery recharger, is $77,000. In addition, there will be a physician implanting charge of approximately $3,500 and an anesthesiologist charge of $1,000, if the procedure is done at Rush University Medical Center Hospital. If the authorization is granted to proceed in the Rush Surgicenter, the cost of replacing it would be the same for the physician fees, but the facility fees would be less in the Surgicenter compared with Rush Hospital."
Dr. Lubenow concluded the letter by requesting that Williams contact him if she had "any additional questions." Williams received the letter on January 9, 2007, but never contacted Dr. Lubenow with any questions. Williams testified that Dr. Lubenow's letter led her to believe that the procedure would be scheduled at some time in the future, but was not imminent. She stated that she did not interpret the letter as requesting authorization for the procedure, but only a statement that the procedure was under consideration.
¶ 5 In May 2007, the battery in the claimant's spinal cord stimulator ceased to function, and Dr. Lubenow scheduled battery replacement surgery to take place that month. Dr. Lubenow's office contacted Williams and requested authorization for the procedure. Williams spoke with Renata at Dr. Lubenow's office on May 8, 2007, and again on May 10, 2007. She advised Renata that she needed a report from Dr. Lubenow explaining the medical necessity for the procedure, and she inquired whether the procedure could be performed at a surgical center rather than a hospital. In addition Williams requested copies of Dr. Lubenow's records.
¶ 6 On June 18, 2007, Renata sent a facsimile correspondence to Williams from Dr. Lubenow setting forth the medical necessity for the procedure and requesting authorization for the surgery, which had been rescheduled for July 9, 2007. Attached to the correspondence were copies of the claimant's medical records covering the period from September 2005 through 2006, and another copy of Dr. Lubenow's letter of December 22, 2006.
¶ 7 On August 2, 2007, the claimant filed a petition with the Commission, requesting that penalties and attorney fees be assessed against Hollywood for failure of its insurance carrier to authorize the battery replacement procedure despite repeated demands and for failure to authorize payment for prescribed medications. On August 15, 2007, Williams authorized the procedure, and the surgery took place on August 27, 2007.
¶ 8 At the hearing on the claimant's petition, Williams admitted that she was in possession of everything that she needed to authorize the battery replacement procedure on June 18, 2007, when she received the facsimile correspondence from Dr. Lubenow's office.
*851 ¶ 9 Following the hearing on the claimant's petition, the Commission issued a unanimous decision on August 31, 2010, in which it found that Hollywood "unreasonably delayed authorization for the surgery performed by Dr. Lubenow, without good and just cause," and as a consequence, awarded the claimant $40,750 in penalties under section 19(k) of the Act (820 ILCS 305/19(k) (West 2008)). The Commission denied the claimant's request for an award of attorney fees under section 16 of the Act (820 ILCS 305/16 (West 2008)) and never addressed any penalties under section 19(l) (820 ILCS 305/19(l) (West 2008)) in the decision. In addition, the Commission found no evidence that Hollywood was ever requested to approve the filling of any prescriptions.
¶ 10 There were no medical bills outstanding at the time of the hearing on the claimant's petition. At oral argument, claimant's counsel candidly admitted that there was no delay in the actual payment of the bills for the claimant's battery replacement surgery.
¶ 11 Hollywood sought judicial review of the Commission's decision in the circuit court of Kane County. The circuit court reversed the Commission's decision awarding the claimant section 19(k) penalties, finding that "[t]here is no legal basis for awarding fees & penalties in this case where PPD had been awarded and there was a delay in authorizing treatment." Thereafter, the claimant filed the instant appeal.
¶ 12 In urging reversal of the circuit court's order, the claimant argues that the manifest weight of the evidence supports the Commission's decision to award penalties. Hollywood argues, inter alia, that it was under no obligation to authorize medical treatment for the claimant and that section 19(k) penalties may not be assessed for an employer's delay in authorizing medical treatment. We agree with Hollywood.
¶ 13 The resolution of this case involves questions of statutory construction. The dispositive issues are questions of law and, therefore, our review is de novo. Ries v. City of Chicago, 242 Ill.2d 205, 216, 351 Ill.Dec. 135, 950 N.E.2d 631 (2011).
¶ 14 Section 19(k) of the Act provides, in relevant part, as follows:
"In case where there has been any unreasonable or vexatious delay of payment or intentional underpayment of compensation, * * * then the Commission may award compensation additional to that otherwise payable under this Act equal to 50% of the amount payable at the time of such award." (Emphases added.) 820 ILCS 305/19(k) (West 2006).
¶ 15 The statute addresses "delay in payment" and "underpayment" of compensation. It says nothing about any award of additional compensation (penalties) for an employer's delay in authorizing medical treatment, even assuming arguendo that an employer has an obligation to give authorization in advance of medical treatment for an injured employee.
¶ 16 The cardinal rule of statutory construction is to ascertain and give effect to the true intent and meaning of the legislature. People ex rel. Hanrahan v. White, 52 Ill.2d 70, 73, 285 N.E.2d 129 (1972). When, as in this case, the language of the statute is clear and unambiguous, courts must interpret the statute according to its terms without resorting to aids of construction. Branson v. Department of Revenue, 168 Ill.2d 247, 254, 213 Ill.Dec. 615, 659 N.E.2d 961 (1995). We are simply not at liberty to rewrite statutes under the guise of interpretation.
*852 ¶ 17 When an unambiguous term contained in a statute is not specifically defined, it should be given its plain and ordinary meaning. Hayes v. Mercy Hospital & Medical Center, 136 Ill.2d 450, 455, 145 Ill.Dec. 894, 557 N.E.2d 873 (1990). Payment is defined as: "[T]he act of paying or giving compensation." Webster's Third New International Dictionary 1659 (1981). The definition does not include the giving of authorization for a service.
¶ 18 The Commission in this case did not award section 19(k) penalties for any delay on the part of Hollywood in paying the claimant's medical bills or for any underpayment of those bills. As a factual matter, claimant's attorney readily admitted that those bills were actually paid in a timely fashion. Rather, the Commission awarded section 19(k) penalties by reason of Hollywood's unreasonable delay in authorizing the claimant's battery replacement surgery, and this it had no statutory authority to do.
¶ 19 At all times relevant to this case, section 8(a) of the Act obligated employers to "provide and pay * * * for all the necessary first aid, medical and surgical services, and all necessary medical, surgical, and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury." 820 ILCS 305/8(a) (West 2006). Assuming for the sake of analysis that this provision of the Act is sufficiently broad so as to include a requirement that an employer authorize medical treatment for an injured employee in advanced of the services being rendered, the fact still remains that there is no provision in the Act authorizing the Commission to assess penalties against an employer that delays in giving that authorization. We are not unmindful of the fact that many medical service providers decline to render services to injured employees unless they first receive authorization from the employer or the employer's workers' compensation insurance carrier. Nevertheless, it is the function of the legislature, not the judiciary, to provide a penalty for those employers that unreasonably or vexatiously delay or refuse to authorize necessary medical services required to cure or relieve an injured employee from the effects of an accidental work injury.
¶ 20 Based upon the foregoing analysis, we affirm the judgment of the circuit court, reversing the decision of the Commission that awarded the claimant $40,750 in penalties pursuant to section 19(k) of the Act.
¶ 21 Affirmed.
Presiding Justice McCULLOUGH and Justice HUDSON concurred in the judgment and opinion.
Justice HOLDRIDGE dissented, with opinion.
Justice STEWART dissented, with opinion, joined by Justice HOLDRIDGE.
¶ 22 Justice STEWART, dissenting:
¶ 23 The majority has determined, as a matter of statutory construction, that section 19(k) of the Act provides no penalty for a delay by an employer or its workers' compensation insurance carrier in authorizing necessary medical treatment for an injured worker. According to the majority's analysis, the only delay subject to penalties under the terms of section 19(k) is a delay in "payment" of a bill after it has been received from the medical provider, no matter how long the employer has delayed providing medical services by refusing to authorize treatment. In my view, the majority's decision construes section 19(k) too narrowly and ignores the factual reality that a delay in "authorization" can *853 also result in a delay in "payment." Therefore, I respectfully dissent.
¶ 24 In a case involving a claim for penalties as a result of a delay in payment of medical bills, section 19(k) must be read together with section 8(a) of the Act, which provides that, "[t]he employer shall provide and pay * * * for all the necessary first aid, medical and surgical services, and all necessary medical, surgical and hospital services thereafter incurred, limited, however, to that which is reasonably required to cure or relieve from the effects of the accidental injury." (Emphasis added.) 820 ILCS 305/8(a) (West 2006). Thus, it is clear under section 8(a) that an employer is obligated to "provide" medical services for an injured worker, as well as "pay" for those services when rendered. Accordingly, specific medical treatments that have been prescribed by a medical provider are deemed "incurred" under section 8(a) of the Act, even though those treatments have not yet been performed or paid for. Plantation Manufacturing Co. v. Industrial Comm'n, 294 Ill.App.3d 705, 710, 229 Ill.Dec. 77, 691 N.E.2d 13, 16-17 (1997).
¶ 25 Section 19(k) provides that penalties may be awarded for "any unreasonable or vexatious delay of payment or intentional underpayment of compensation." 820 ILCS 305/19(k) (West 2006). It is well recognized that an unreasonable or vexatious delay in payment of medical expenses, even when it occurs prior to any award in favor of a claimant, subjects the employer to penalties under section 19(k) of the Act. McMahan v. Industrial Comm'n, 183 Ill.2d 499, 512, 234 Ill.Dec. 205, 702 N.E.2d 545, 551 (1998). Although section 8(a) also requires the employer to "provide" medical services for an injured worker, the majority narrowly construes section 19(k) to only provide penalties for a delay in "payment" of the medical bill once medical services have been rendered. The majority's interpretation provides no protection for the injured worker from an employer who unreasonably or vexatiously refuses to "provide" medical services by refusing authorization for those services. Under the majority's analysis, where the delay in "payment" can only commence with the receipt of a medical bill for services rendered, it is only the medical provider who is protected in the payment of its bill. In my view, the majority's construction of section 19(k) is "contrary to the remedial purpose of the Act and the mandate to interpret the Act liberally so as to affect that purpose." Plantation Manufacturing Co., 294 Ill.App.3d at 710, 229 Ill.Dec. 77, 691 N.E.2d at 17. The very purpose of the Act is to protect the injured worker and that purpose is clearly frustrated by the majority's interpretation.
¶ 26 Assuming for the sake of argument, as does the majority, that an employer has an obligation to give authorization in advance of medical treatment for an injured worker, I would interpret section 19(k) to provide penalties for a delay in authorization. It must have been the intent of the legislature in enacting section 19(k) to provide penalties when an employer refuses to provide an injured worker with the benefits provided under the Act. The majority's narrow interpretation allows an employer to completely refuse to provide medical services required by an injured worker and suffer no penalty.
¶ 27 Furthermore, even accepting the majority's premise that section 19(k) only provides penalties for a delay in "payment," there is nothing in the Act which prevents a claimant from proving that a delay in "authorization" resulted in a delay in "payment." Delaying authorization for medical services is simply one means of delaying payment. Thus, if the Commission finds that an employer has unreasonably or vexatiously failed or refused to *854 authorize medical services and that has resulted in a delay in payment, section 19(k) has been satisfied.
¶ 28 The facts of this case amply demonstrate the fallacy of the majority's analysis. The claimant's physician, Dr. Lubenow, notified the employer's workers' compensation insurance carrier in December of 2006 that the claimant was in need of surgery to replace the failing batteries in her spinal cord stimulator in the first quarter of 2007. Although Dr. Lubenow's letter discussed alternative terms under which "authorization [could be] granted to proceed," the adjuster did not believe surgery was "imminent" and did not interpret the letter to be "requesting" authorization. It is hard to imagine any interpretation of this letter other than an attempt to obtain advance authorization of the procedure so that it would not be necessary to do so when the need for surgery was, in fact, imminent. Nevertheless, the adjuster did not respond to the letter and took no action, although Dr. Lubenow's letter requested that she contact him if she had "any additional questions."
¶ 29 As Dr. Lubenow predicted, the batteries in the claimant's spinal cord stimulator ceased working in May of 2007. As a result, surgery was scheduled in May and Dr. Lubenow specifically requested authorization for the surgery. Rather than authorize the treatment, the adjuster then asked for additional information. In the absence of authorization, the May surgery was cancelled. On June 18, 2007, Dr. Lubenow's office responded to the adjuster's request for additional information and the surgery was again scheduled in July. Although the adjuster testified that she had all the information she needed to authorize the surgery on June 18, no authorization was forthcoming and the July surgery was also cancelled. It was only after the claimant filed a petition for penalties on August 2, 2007, that the surgery was authorized on August 15 and proceeded on August 27.
¶ 30 While it is true that the insurance carrier promptly paid the bill for the surgery after it was performed, it is equally true that its delay in authorization of the surgery delayed the issuance of the bill in the first place. There is little doubt in this case that the delay in authorization of the surgery resulted in a delay in the performance of the medical services the claimant needed which also resulted in a delay in the payment of those services. In my view, if an employer effectively delays "payment" for medical services by refusing to provide authorization for those services, the employer is subject to penalties under section 19(k) of the Act. The Commission found that the delay created by the employer's workers' compensation insurance carrier in this case was unreasonable and vexatious, and that finding is not against the manifest weight of the evidence. I would reverse the circuit court and affirm the Commission.
¶ 31 For the foregoing reasons, I respectfully dissent.
¶ 32 Justice HOLDRIDGE joins in this dissent.
¶ 33 Justice HOLDRIDGE, dissenting:
¶ 34 I join in Justice Stewart's dissent. I also write to make two additional points. First, I disagree with the majority's conclusion that the language of section 19(k) regarding "delay in payment" established a clear and unambiguous intent by the legislature not to penalize a delay in "authorization." The concept of "authorization," i.e., where the medical provider requires from the employer's workers' compensation carrier a promise of payment before medical services will be rendered, was simply not contemplated by the legislature when the penalty provisions *855 of the Act were drafted. The medical community and the insurance companies, by this practice of seeking and granting prior authorization, have made "authorization" an integral part or stage of "payment" such that a delay in payment authorization is, in fact, a delay in payment. Nothing in the clear and unambiguous language of section 19(k) would lead us to conclude that the legislature did not intend to include all parts or stages of "payment" in its prohibition against "any unreasonable or vexatious delay of payment." 820 ILCS 305/19(k) (West 2006). Moreover, as Justice Stewart noted, this court has already held that the obligation to provide medical services is the same as the obligation to pay for those services. Plantation Manufacturing Co. v. Industrial Comm'n, 294 Ill. App.3d 705, 710, 229 Ill.Dec. 77, 691 N.E.2d 13 (1997).
¶ 35 I also write to point out that, as the facts in the instant matter aptly illustrate, allowing penalties to be awarded for unreasonable or vexatious delay in the authorization stage of payment does not increase an employer's exposure to the payment of penalties beyond that contemplated by the legislature. Here, the employer's insurance claims adjuster received a communication from Dr. Lubenow on December 22, 2006, regarding a future need for further medical services "within the first quarter of 2007." The adjuster testified that she did not consider the letter to be a request for authorization, but only a statement that the procedure was under consideration. In May 2007, Dr. Lubenow's office contacted the adjuster and sought authorization for surgery to take place that month. The adjuster sought additional information explaining the medical necessity for the procedure. The documentation sought by the adjuster was not provided until June 18, 2007.
¶ 36 The facts up to this point do not establish that the delay in the payment authorization was unreasonable or vexatious. The December 22, 2006, letter from Dr. Lubenow did not explicitly seek authorization for payment and could have reasonably been interpreted as a status update. The next communication from Dr. Lubenow, in May 2007, clearly sought payment authorization but reasonably lacked sufficient information and documentation for the adjuster to decide whether she agreed with the medical necessity of the prescribed procedure. Nothing in those facts would lead the Commission to find that the employer had engaged in any unreasonable or vexatious delay in payment authorization.
¶ 37 However, the claims adjuster admitted that she was in possession of everything she needed to agree to payment authorization on June 18, 2007. Yet, payment authorization was not granted until August 15, 2007, almost two months later, and only after the claimant had filed and served a petition requesting penalties and attorney fees for unreasonable delay in granting payment authorization. The Commission found that this unexplained delay was unreasonable and vexatious, and that finding was not against the manifest weight of the evidence. I would reverse the circuit court and affirm the Commission.
¶ 38 For the foregoing reasons, I respectfully dissent and also join in Justice Stewart's dissent.